**MFA MUTUAL INSURANCE COMPANY, Petitioner,**

v.

**Lyle M. FLINT and wife, Delma Flint and Perry Butler and wife, Sherry Butler, Respondents.**

Supreme Court of Tennessee.

Dec. 11, 1978.

Jerry D. Kizer, Jr., Menzies, Rainey & Kizer, Jackson, for petitioner.

Max D. Lucas, Jr., Tenn. Defense Lawyer's Assoc., Memphis, amicus curiae.

Phillip G. Hollis, Peeler & Hollis, Camden, for respondents.

## OPINION

COOPER, Justice.

Certiorari was granted in this case to clarify the duty owed by an insurance company to its insured in settling a claim of its insured under the uninsured motorist provision of an automobile liability insurance policy. There is also the question whether MFA Mutual Insurance Company breached its duty in settling the claims of respondents.

The respondent, Lyle Flint, was issued an automobile liability insurance policy by MFA, which also provided medical payment coverage of $2,000.00 for each person, and

uninsured motorist coverage of $25,000.00 for each person and $50,000.00 for each accident.

On March 13, 1975, while driving the insured automobile and with her daughter, Sherry Butler, as a passenger, Mrs. Flint was involved in an automobile collision. Both Mrs. Flint and Mrs. Butler sustained disabling personal injuries.

The driver of the other automobile was an uninsured motorist within the meaning of the policy issued by MFA. Both Delma Flint and Sherry Butler were insureds within the policy definition and were within the uninsured motorist coverage.

On investigating the accident, MFA determined that Delma Flint was guilty of no negligence and that the collision was solely the fault of the driver of the other automobile. An adjuster for MFA then effected a settlement with respondents, paying the wages lost by Mrs. Flint and Mrs. Butler and that part of their medical expenses not paid under other insurance policies owned by respondents.

Thereafter, an action against the Flints was filed by parties in the other automobile. MFA notified the Flints that the exposure of the Flints was in excess of their policy limits. The Flints consulted an attorney, who, upon learning of the basis of settlement of the respondents' claims, filed actions in the chancery court for rescission or reformation of the releases claiming that the actions of MFA showed bad faith, breach of fiduciary duties, fraud and misrepresentation.

On trial, the chancellor found the MFA had dealt with respondents "in bad faith and in such a way that [its] conduct in the procuring of the releases shocked the conscience of the court." The chancellor then entered a decree setting the releases aside.

The Court of Appeals affirmed the chancellor's action, the majority holding that:

. . . [A]n insurer, when attempting to settle a claim of its insured under the uninsured motorist coverage, owes the insured a much higher duty than it would owe to a tort claimant when settling a claim against the insured under the liability coverage of the policy. *Under the circumstances presented here, the duty owed by the insurer to its insured rises to that of fiduciary.* The utmost good faith is required. The facts of coverage, the amount of coverage, the position of the parties and the effect of settlement must be fully revealed to the insured, and the insurer must see that the necessary steps are taken to reveal to the insured complete information as to the nature and extent of the injuries suffered." (emphasis supplied)

Petitioner insists there can be no fiduciary relationship between the insurer and its insured when the insurance company is settling a claim directly with its insured—that the relationship is merely a contractual one measured by the terms of the insurance contract.

We agree generally that no fiduciary relationship exists between an insurer and its insured when the company is settling a claim directly with its insured, but it does not necessarily follow that the insurer owes no duty that is not specifically spelled out in the contract drawn by the insurer. As noted in *Bowler v. Fidelity and Casualty Company of New York*, 53 N.J. 313, 250 A.2d 580 (1969), which involved a limitation of time to sue on a policy of disability insurance:

Insurance policies are contracts of the utmost good faith and must be administered and performed as such by the insurer. Good faith "demands that the insurer deal with laymen as laymen and not as experts in the subtleties of law and underwriting." [Citations omitted]. In all insurance contracts, particularly where the language expressing the extent of the coverage may be deceptive to the ordinary layman, there is an implied covenant of good faith and fair dealing that the insurer will not do anything to injure the right of its policyholder to receive the benefits of his contract. This covenant goes deeper than the mere surface of the writing. When a loss occurs which because of its expertise the insurer knows

or should know is within the coverage, and the dealings between the parties reasonably put the company on notice that the insured relies upon its integrity, fairness and honesty of purpose, and expects his right of payment to be considered, the obligation to deal with him takes on the highest burden of good faith. 250 A.2d 580 at 587.

The duty to deal with its insured fairly and in good faith has been imposed upon an insurer settling a claim made by its insured under the uninsured motorist provision of an automobile liability insurance contract, though not universally so. *See Craft v. Economy Fire and Casualty Co.* (7th Cir., 572 F.2d 565 (1978)); *Richardson v. Employer's Liability Assurance Corp.,* 25 Cal. App.3d 232, 102 Cal.Rptr. 547 (1972). *But see Baxter v. Royal Indemnity Co.,* 285 So.2d 652 (Fla.App.1973). In opting for the imposition on the insurer of the duty of dealing with its insured "fairly and in good faith," the court pointed out in *Craft v. Economy Fire & Casualty Co., supra,* that:

[The] theory that the existence of a good faith duty is totally incompatible with the substituted liability nature of uninsured motorist coverage and the consequent adversary relationship between insurer and insured is not convincing. Uninsured motorist coverage represents substituted liability only in the sense that a determination that the uninsured motorist is legally liable to the insured is a condition precedent to the obligation of the insurer to pay off on the policy. In this determination the insurer stands in the shoes of the uninsured motorist with regard to the question of whether the latter was negligent and with regard to his defenses such as contributory negligence. This does not make the insurance company an insurer in fact of the uninsured motorist. Their relationship is not characterized by the rights and duties normally incident to the relationship between an insured and his insurer under a third party liability policy. Moreover, it does not make the insurer a stranger to its insured. After all, the insured is the one who pays the premiums for the uninsured motorist protec-

tion and the "reasonable expectation" that he will be dealt with fairly and in good faith by his insurer is still present.

\* \* \* \* \* \*

. . . In the uninsured motorist situation there is no element of "control" of the insured's side of the litigation by the insurance company which would give rise to a "fiduciary" duty. It does not necessarily follow that the insurer is completely free of any obligation of good faith and fair dealing to its insured, since the latter duty is based on the reasonable expectations of the insured and the unequal bargaining positions of the contractants, rather than the insurance company's "control" of the litigation. 572 F.2d 565, 568–569.

■ We think the position taken by the court in *Craft v. Economy Fire and Casualty Company, supra,* more nearly conforms with an insured's expectations on purchasing uninsured motorist coverage, and more nearly protects the rights of all parties to the insurance contract. We hold, therefore, that an insurer is under the duty of dealing with its insured "fairly and in good faith" in settling a claim by its insured under the uninsured motorist provision of an automobile liability insurance contract.

Did MFA deal fairly and in good faith with respondents in settling their claims? The chancellor expressly found that it did not—that MFA dealt with respondents "in bad faith and in such a way that its conduct in the procuring of the releases shocked the conscience of the court." We agree with the chancellor's assessment of MFA's actions.

The evidence shows that on June 10, 1975, Chalmas B. Carpenter, an adjuster with seventeen years experience, but employed by MFA for only one week, went to the home of the Flints. At the time, he knew that MFA had determined that it was liable to respondents under the uninsured motorist coverage of the contract of insurance. He further knew that Mrs. Flint had suffered severe and painful personal injuries, not the least of which was the loss of a knee

cap, and that she was permanently disabled. He further knew, or learned soon after arriving at the Flints from questions asked him, that the Flints did not know the extent of the coverage afforded them under the uninsured motorist provision of the policy. Though Mr. Carpenter testified to the contrary, we think it evident from the testimony of the Flints and from the negotiations between the parties that Mr. Carpenter did not tell the Flints that uninsured motorist coverage covered "bodily injury" as well as medical expenses and lost earnings. Though cognizant of the fact that the liability of the uninsured motorist was absolute, Mr. Carpenter told the Flints he would pay the medical expenses of Delma Flint which had not been paid by her group medical coverage and would pay for her lost earnings, plus, he would "give her" an additional month of wages. He made no mention of compensation for past or future pain and suffering, future loss of earning capacity, or past or future loss of enjoyment from restricted activities due to what Mr. Carpenter admittedly knew was a permanent injury. Mr. and Mrs. Flint executed an uninsured motorist receipt and trust agreement in exchange for a draft issued by Mr. Carpenter.

Thereafter, Lyle Flint accompanied Mr. Carpenter to the home of Sherry Butler and was present when settlement of her claim was negotiated. Mr. Carpenter made no explanation to Mrs. Butler as to her rights under the policy, but told her the terms of the settlement with her parents and made an offer to settle her claim on the same basis, that is, to pay the balance of her medical bills and loss of wages. Although the accident was admittedly the fault of the uninsured motorist, payment to the Butlers was made under the liability provisions of the policy, rather than under the uninsured motorist coverage, and a release of the Flints taken, rather than an uninsured motorist receipt and trust agreement.

Mr. Carpenter testified frankly that Mrs. Flint's claim was worth more money than the Flints' were paid and that he would have paid more in settlement of the claim, had the Flints asked for more. This testimony is in keeping with the statement made by him in reporting his actions to his immediate supervisor that "under the circumstances of Mrs. Flint being permanently disabled, I feel this [the settlement of the claim by payment of a part of the medical expenses and loss of wages] to be a very reasonable settlement. I therefore proceeded to have them execute a release and issued them a draft payable to both."

Keeping in mind the fact that there was never any question but that the uninsured motorist was solely responsible for the accident and that MFA was liable to respondents under the uninsured motorist provision of the policy, the duty of MFA to deal with its insured "fairly and in good faith" required Mr. Carpenter to inform respondents as to the extent of coverage afforded them under the MFA policy before negotiating a settlement, especially since it was apparent to Mr. Carpenter that respondents did not know the coverage. This Mr. Carpenter did not do. Instead, he took advantage of respondents' ignorance to negotiate a settlement for a grossly inadequate consideration. He was able to do this by leaving out of the negotiations damages due to be paid respondents for personal injuries. Under the circumstances of this case, this action by Carpenter is clearly bad faith and overreaching and breaches the duty MFA owed respondents to deal with them fairly and in good faith.

The decree of the chancellor setting aside the releases executed by respondents is affirmed. Costs of the action are adjudged against MFA Mutual Insurance Company and its surety.

HENRY, C. J., and FONES, BROCK and HARBISON, JJ., concur.