Dorothy G. **CHANDLER**,
Plaintiff/Appellant,

v.

**PRUDENTIAL INSURANCE COMPANY**,
Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

May 19, 1986.

Application for Permission to Appeal
Denied by Supreme Court
July 28, 1986.

**616**

Eugene J. Phelan and Eugene C. Gaerig, Memphis, for plaintiff/appellant.

J.N. Raines and G. Coble Caperton, of Glankler, Brown, Gilliland, Chase, Robinson & Raines, Memphis, for defendant/appellee.

TOMLIN, Judge.

Plaintiff brought suit in the Circuit Court of Shelby County against defendant, Prudential Insurance Company of America (hereinafter "Prudential"). Plaintiff sued for the alleged wrongful termination of disability benefits she had been receiving pursuant to a policy issued by Prudential to her former employer as part of her fringe benefits. Plaintiff's complaint was amended, restated, supplemented and substituted for prior to a final determination in the trial court. She contended that Prudential's denial of her claim and termination of benefits was done in bad faith, and that she was entitled, therefore, to the statutory penalty as set out in T.C.A. § 56–7–105. In addition, plaintiff contended that the facts entitled her to both compensatory and punitive damages in the hundreds of thousands of dollars from Prudential for the commission of the tort of bad faith, of the tort of outrageous conduct, and the violation of the Tennessee Consumer Protection Act. Prudential's motion for partial summary judgment was granted as to the issues involving the tort of outrageous conduct, the tort of bad faith, and the Tennessee Consumer Protection Act. During the course of this litigation, Prudential reinstated plaintiff's disability benefits. Plaintiff nonsuited her claim for the statutory bad-faith penalty. The judgment of the circuit court became final and plaintiff appealed.

The principal issue presented by this appeal is whether or not the trial court erred in granting defendant's motion for summary judgment on plaintiff's claims based upon the tort of bad faith, the tort of outrageous conduct, and the violation of the provisions of the Tennessee Consumer Protection Act, T.C.A. § 47–18–101, et seq. Plaintiff also raises as an issue the denial of her motion to compel responses by the defendant to request for admissions, and defendant claims error on the part of the trial court in granting a motion *in limine* by the plaintiff. However, we pretermit these issues. We hold that the trial court acted correctly in granting defendant's summary judgment motions.

## I. THE PLEADINGS.

Inasmuch as this case was decided on summary judgment, of necessity, the factual allegations of the plaintiff must be considered at length. However, it would unduly lengthen this opinion for this Court to analyze and compare the complaint, its amendments, and a subsequently filed "Restated and Substituted Complaint." Accordingly, we shall quote at length from plaintiff's "Restated and Substituted Complaint." Following the usual allegations aligning the parties and their relationships, the complaint sets forth the following factual basis for plaintiff's claims and related allegations.

The long-term disability benefits were provided to the plaintiff to cover injuries to the employee, Chandler, off of the job. In addition, weekly benefit coverage was provided by Shulton, Inc. and American Cyanamid, to its employees including the plaintiff, when an employee could not work because of illness or injury, other than maternity. The benefits ranged up to $100.00 per week, depending upon the

monthly pay of the employee. These weekly benefits started on the fourth day of disability and continued for as long as twenty-six weeks and then after a person had been totally disabled twenty-six consecutive weeks, the long-term disability benefits started. The long-term disability plans also provided that any benefits payable to the employee under the Social Security Act or weekly benefits would be considered part of the long-term disability income paid to an employee by Shulton, Inc. and American Cyanamid Company. In order to fund a part or all of the long-term disability benefits by Shulton, Inc. and American Cyanamid Company, to its employees who cannot work, Shulton, Inc. and/or American Cyanamid Company, contracted with the Prudential Insurance Company of America to provide funding for the long-term disability payments. The plaintiff, Dorothy G. Chandler, was an object of a contract between her employers, Shulton, Inc. and American Cyanamid Company and the Prudential Insurance Company to provide long-term disability plans; the Prudential Insurance Company of America issued a policy of insurance to the American Cyanamid Company entitled Group Policy GV–9300. This policy covered plaintiff, Dorothy G. Chandler, and she received benefits pursuant to said group policy. The Prudential Insurance Company of America is a foreign corporation qualified to do insurance business in the State of Tennessee and was doing business in the State of Tennessee at all times material hereto and had issued a group disability policy to American Cyanamid Company, Group Disability Policy Number GV–9300, which provided long-term disability funding for the employee benefit package for long-term disability income between the employees of the American Cyanamid Company and its employees, including plaintiff Dorothy G. Chandler. The plaintiff prays that the Prudential Insurance Company of America attach a copy of this group disability policy to its Answer, as required by Tennessee law, Tennessee Code Annotated 56–7–107. Under the employee benefit package afforded to plaintiff through Shulton, Inc., and American Cyanamid Company, the plaintiff was entitled to weekly benefits starting on the fourth day of her disability and continuing for as long as twenty-six weeks. The requirements for this weekly benefit were such that the employee had to be disabled, under the regular care of a licensed physician, and unable to perform the duties of the Cyanamid job. After twenty-six weeks, the weekly benefits provided an employee at Cyanamid were discontinued and the long-term disability started. This long-term disability plan provided for two years of long-term disability benefits if the employee were disabled, under the regular care of a licensed physician, and unable to perform the duties of the employee's Cyanamid job. After two years, the monthly long-term disability benefits continued for life, as long as the employee's disability kept the employee from working for Cyanamid or any place else at any job for which the employee was reasonably qualified on the basis of said employee's education, training, and experience. It is believed, upon information and belief, that the Prudential Insurance Company of America did not start making payments under the group disability plan for two years or until the employer, American Cyanamid Company, had paid its employees, for the first two years of long-term disability benefits, plus the initial weekly benefits of twenty-six weeks.

4. Plaintiff, Dorothy G. Chandler, would show unto the Court that for approximately sixteen (16) years she was employed by Shulton, Inc. and American Cyanamid Company. That in December of 1976 plaintiff injured her back at the Methodist Hospital, as hereinafter described and that as a result thereof, has been unable to engage in any gainful occupation.

5. Plaintiff would further show unto the Court that on or about December 27, 1976, she sustained severely painful and

permanent injuries to her lumbo-sacral spinal area secondary to a fall at the Methodist Hospital, Memphis, Tennessee, while plaintiff was on an out-patient status. That in April of 1977, she was admitted to Methodist Hospital for removal of a herniated nucleus pulposus at the fifth lumbar and first sacral vertebrae, following which a bi-lateral spinal fusion was performed at said anatomical location. That since said accident and resultant injuries of December 27, 1976, plaintiff has been unable to engage in any gainful occupation for which she is qualified on the basis of her education, training and experience. That medical information substantiating plaintiff's contention with respect to her inability to engage in any gainful employment has been furnished to the defendant· herein. That the plaintiff received from her employer weekly benefits for twenty-six weeks, then received long-term disability benefits until April 1, 1980. That on April 4, 1980, the plaintiff received a letter from the Prudential Insurance Company of America informing her that her long-term disability payments were terminated, as medical evidence in Prudential's file indicated she was not totally disabled. Medical evidence upon which said determination was based has not been identified and forwarded to either plaintiff or her attorney, with whom said defendant has been negotiating. That plaintiff has fully co-operated with defendants in undergoing medical examinations by physicians selected by the defendant to determine her ability to perform any occupational duties for which she was reasonably qualified by education, training and experience, and plaintiff respectfully submits that the tenor and substance of reports from physicians so examining plaintiff clearly negate defendant's theory that plaintiff is not, in fact, disabled from engaging any gainful occupation for which she is reasonably qualified by education, training or experience as that term is used in contract between plaintiff and defendant. Plaintiff would further show that the (sic) subsequent to the arbitrary termination of her long-term disability by the defendant, that she submitted to an additional medical examination at the request of the defendant Prudential Insurance Company. That the sum and substance of Dr. Bourland's professional opinion is to the effect that plaintiff had restrictions of motion, constant pain of a chronic nature in her back and that she should not attempt to engage in any type of activities requiring heavy lifting, bending, stooping, prolonged standing or sitting. According (sic) plaintiff respectfully submits that she is entitled to long-term disability benefits from the date the same were terminated by the defendant for the balance of her life by virtue of her inability to engage in any gainful occupation for which she is reasonably suited by education, training and experience.

It is upon these factual allegations that plaintiff couches her claim for damages against Prudential.

## II. ALLEGED BAD FAITH.

### A. The Statutory Penalty.

As part of her claim, plaintiff sought to recover the twenty-five percent bad-faith penalty provided by T.C.A. § 56–7–105, contending that the action of Prudential in terminating her long-term disability benefits was arbitrary and capricious and not in good faith. Prudential's motion for summary judgment on this allegation was denied. However, prior to the court's decision on the summary judgment motions, plaintiff took a voluntary nonsuit as to her claim for the statutory penalty.

### B. Plaintiff's Claim Based On the "Tort of Bad Faith."

In her complaint, plaintiff stated:

The defendant was guilty of the tort of bad faith in that it breached its duty of good faith and fair dealings with the plaintiff. The defendant failed to deal fairly and in good faith with the plaintiff by refusing, without probable cause, to

compensate the plaintiff for disability benefits owed by the defendant to the plaintiff. This tortious conduct of the defendant is for its breach of the covenant to deal with the plaintiff in good faith and fair dealings. This tortious conduct subjects the defendants to compensatory and punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00).

In this short paragraph plaintiff contends that defendant breached its contract with plaintiff by terminating her benefits, that this action was one of "bad faith," and this alleged breach by Prudential constitutes a "tort of bad faith" independent of the contract between the parties.

■ Inasmuch as plaintiff has taken a voluntary nonsuit as to her claim under the bad-faith statute and has devoted some thirty-five pages of argument in her brief to the tort of bad faith, it is clearly perceived by this Court that an objective of plaintiff is to have this Court decide—for the first time—that the tort of bad faith exists in Tennessee insofar as an action between an insured and its insurer is concerned.

Plaintiff concedes that such is presently not the law in Tennessee. In an effort to persuade this Court to align itself with other jurisdictions that recognize such a tort under these circumstances, plaintiff has cited and quoted from cases in many other states. Even though the case law in Tennessee is rather sparse on this subject, we think there are sufficient reasons for affirming the trial court. While this record is replete with many depositions filed in support of and in opposition to the parties' motions for summary judgment, at this point we are not passing upon the merits or demerits of the allegations of bad faith.

In its brief counsel for Prudential asserts that the insurance industry is one of the most highly regulated industries in this state. With that we agree. It is noted that one entire volume of Tennessee Code Annotated is devoted to the topic "Insurance." What has come to be known as "the bad-faith penalty statute," found in T.C.A. § 56-7-105, reads in part as follows:

> 56-7-105. *Additional liability upon insurers and bonding companies for bad-faith failure to pay promptly.*—(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, *in all cases* when a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy or fidelity bond on which said loss occurred, shall be liable to pay the holder of said policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy or fidelity bond; and, provided, further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss and injury thus entailed. (Emphasis supplied).

The research of the writer has turned up no case other than that cited in Prudential's brief, *King v. Mutual Life Insurance Co. of New York,* 114 F. Supp. 700 (E.D.Tenn. 1953). The facts of *King* are quite similar to the case at bar, as is its procedural history. The suit grew out of the refusal by the insurance company to pay plaintiff disability benefits alleged to be due under a policy of insurance. The complaint was in four counts, the first count being for the accrued monthly benefits, plus the statutory penalty of twenty-five percent of the amount recovered. The second count sought a reformation of the contract. The third count was grounded on the alleged breach of the policy and its repudiation by the defendant. The fourth count sought to rescind the entire contract and to recover all premiums.

In sustaining defendant's motion to strike the second, third and fourth counts, Judge Taylor of the Eastern District stated:

> Nor is the third count maintainable. The Court has been able to find no case, nor have the parties cited any case of this State, which sanctions the relief sought by the plaintiff in the third count. However, where the factual situation is as alleged here, a statute provides the plaintiff a remedy. This remedy is not allowance of damages for anticipatory breach of the insurance contract. It is impliedly a recognition that cases will arise where insurance companies will not act in good faith in their refusal to pay accrued insurance benefits. For such cases the statute provides a recoverable penalty of 25% of the amount recovered as a result of the plaintiff's lawsuit against the insurer. Williams' Code, § 6434.

*Id.* at 701–02.

In applying a statute similar to ours, the courts of our neighboring state of Georgia have acknowledged the exclusivity feature of the bad-faith penalty statute. Section 56–1206 of the Georgia Code Annotated reads in part as follows:

> Liability of insurer for damages and attorney's fees
>
> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 percent of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the case against the insurer.

In *Tate v. Aetna Casualty & Surety Co.,* 253 S.E.2d 775 (Ga.Ct.App.), *cert. denied* (1979) the Georgia Court of Appeals applied and interpreted the above statute in the same manner as did Judge Taylor some thirty years previous. In *Tate,* plaintiff brought suit against the defendant on a fire policy, alleging that after sustaining a loss he reported it to the company, which proceeded to handle his claim in a negligent manner. Plaintiff further alleged that as a result of defendant's acts of negligence, he suffered various types of financial damage as well as mental and emotional suffering. He sought actual damages plus punitive damages.

In affirming the action of the trial court granting defendant's motion for summary judgment, the court found that any duties existing from defendant to plaintiff arose out of the insurance contract. The court stated:

> Construing the facts in this case most strongly against the movant, still it is clear that, at most, there was a breach of contract on the part of the defendant by failing to pay the plaintiff the full amount of damages owed under the terms thereof. Hence, the damages sought to be recovered by the plaintiff are limited to the "bad faith" provisions of Code Ann. § 56–1206....

*Id.* at 777.

Our holding herein as to the tort of bad faith is consistent with opinions of this Court and other courts in this state relative to the exclusivity of the Workers' Compensation Act concerning an employee bringing an independent tort action against his employer's workers' compensation carrier. *See Laquita Perry v. Transamerica Group,* 703 S.W.2d 151, (decided by this Court September 9, 1985, application for permission to appeal denied November 25, 1985); *Liberty Mutual Insurance Co. v. Stevenson,* 212 Tenn. 178, 368 S.W.2d 760, 761 (1963); and *Leatherwood v. United Parcel Services and Liberty Mutual Insurance Co.,* 708 S.W.2d 396, decided by this Court on October 28, 1985, application for permission to appeal denied January 13, 1986.

In each of the above cases it was held that notwithstanding the fact that the plaintiff alleged that his or her damages arose from an "injury" that did not occur in the course of her employment, the exclusive remedy for the wrong alleged was the

Workers' Compensation Act, as provided by T.C.A. § 50–6–108.

The similarity between the two statutes is striking. Section 50–6–108 states in substance that the rights and remedies granted to an employee covered by the Workers' Compensation Act for personal injury or death by an accident excludes all other rights or remedies of such employee, common law or otherwise. By the same token, section 56–7–105 provides that *in all cases*, when a loss occurs and demand is properly made by the policyholder, if an insurance company refuses to pay, it shall be liable not only for the amount of the loss, but also for a sum not exceeding twenty-five percent thereof. In our opinion, the phrases *"in all cases"* and "exclusive remedy" denote the same degree of exclusiveness.

The question of the exclusivity of the statutory remedy is well stated in *Debolt v. Mutual of Omaha*, 56 Ill.App.3d 111, 13 Ill.Dec. 656, 660, 371 N.E.2d 373, 377 (1978).

> We are of the opinion that the legislature has intended to provide a remedy to an insured who encounters unnecessary difficulties with an unreasonable and vexatious insurance company. The insured can maintain an action on the contract for recovery of withheld policy benefits and upon proper finding by the court can be awarded attorney fees in addition to all other costs. Where the legislature has provided a remedy on a subject matter we are not only loath but in addition harbor serious doubts as to the desirability and wisdom of implementing or expanding the legislative remedy by a judicial decree.

Plaintiff contends that the decision of our Supreme Court in *MFA Mutual Insurance Co. v. Flint*, 574 S.W.2d 718 (Tenn. 1978), recognized the tort of bad faith in Tennessee. We do not read *Flint* that way and are of the opinion that plaintiff's reliance thereon is misplaced. In the first paragraph of *Flint*, Justice Cooper clearly defined the issue before the Court "to clarify the duty owed by an insurance company to its insured in settling a claim of its insured under the uninsured motorist provision of an automobile liability insurance policy." *Id.* at 719. Flint suffered personal injuries in an automobile collision. The driver of the other automobile was an uninsured motorist. MFA's investigation determined that Flint was guilty of no negligence, and the collision was solely the fault of the driver of the other vehicle. Subsequently, an adjuster for MFA negotiated a settlement with Flint. Flint later consulted an attorney who, upon learning of the settlement with MFA, brought this action in chancery court to rescind or reform the releases given by Flint to MFA, alleging bad faith and breach of fiduciary duties by MFA.

The chancellor found that MFA had dealt with Flint in "bad faith in procuring the releases" and set them aside. In affirming the chancellor's actions, the Court of Appeals stated in part that "[u]nder the circumstances presented here, the duty owed by the insurer to the insured rises to that of fiduciary. The utmost good faith is required." *Id.*, at 720.

In affirming, the Supreme Court stated, "[W]e hold, therefore, that an insurer is under the duty of dealing with its insured 'fairly and in good faith' in settling a claim by its insured under the uninsured motorist provision of an automobile liability insurance contract." *Id.*, at 721. After reviewing the facts and the record, the Supreme Court found that MFA's agent did not act in good faith and affirmed the chancellor's decree, setting aside the releases executed by the insured.

Nowhere in *Flint* does our Supreme Court state that it is acknowledging the tort of bad faith in this state. *Flint* was a contract action. It sought a contractual type of relief, the rescission of releases for fraudulent inducement and acts of bad faith on the part of the insurer. Certainly, acts of fraudulent inducement amount to "bad faith," but where contractual relief is given on those grounds, this cannot be construed as recognizing the existence of the tort of bad faith in this state.

### III. OUTRAGEOUS CONDUCT.

As pertains to plaintiff's claim of alleged outrageous conduct on the part of Prudential, her complaint alleges as follows:

Plaintiff alleges that the decision by the defendant Prudential Insurance Company to terminate the long-term disability contractual right that the plaintiff had with the defendant was arbitrary, capricious, without merit, and so intolerable and outrageous as to not be tolerated in a civilized society. That the decision by the defendant to terminate the plaintiff's benefits as set forth above was an arbitrary, capricious denial of the plaintiff's contractual rights with the defendant and was carried out maliciously by the defendant with full knowledge of plaintiff's incapacity to engage in any gainful activities for which she was reasonably fitted by education, training and experience. That defendant well knew that its actions in arbitrarily and capriciously terminating plaintiff's long-term benefits were calculated to and did, in fact, cause plaintiff substantial mental anguish and depression. That the defendant knew when it arbitrarily and capriciously stopped her benefits, contractual rights with the defendant, that this would cause the plaintiff a great deal of mental anguish, physical suffering due to the lack of income for which she had worked so hard and due to no fault of the plaintiff. The conduct of the defendant in stopping her long-term disability benefits under the facts that it had before it was so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community and constitutes the tort of outrageous conduct for which the plaintiff seeks compensatory and punitive damages in an amount not to exceed Five Hundred Thousand Dollars ($500,-000.00).

■ The rule in this state is that the actionable conduct under this tort must be set out in the pleadings. *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966). It is the duty of the court to deter-mine whether the defendant's conduct has established the elements of the tort. *See* RESTATEMENT (SECOND) OF TORTS. § 46 comment h and j (1965). The standard or test is set forth in comment d to § 46, RESTATEMENT (SECOND) OF TORTS:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

This language is frequently repeated in Tennessee cases as the requirements for recovery in outrageous conduct cases. *See Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn.App.), *cert. denied* (1975); *Foster v. Trentham's, Inc.*, 458 F.Supp. 1382 (E.D.Tenn.1978); *Moorhead v. J.C. Penney Co.*, 555 S.W.2d 713 (Tenn.1977); *Swallows v. Western Electric Co.*, 543 S.W.2d 581 (Tenn.1976); *Goldfarb v. Baker*, 547 S.W.2d 567 (Tenn.1977); and *Nelson v. Ford Motor Credit Co.*, 621 S.W.2d 573, (Tenn.App.), *cert. denied* (1981).

■ The pleadings fail to state a cause of action because no instances of abusive or outrageous conduct are alleged in the complaint. *See Medlin v. Allied Investment Co., supra.* For the most part, the allegations of outrageous conduct utilize conclusory words, at the same time tracking the descriptive criteria set forth in the Restatement. This is not sufficient. As to this deficiency, the observations made by Chief Justice Cooper in *Swallows, supra*

aptly describe the pleadings in the case at bar.

The Tennessee Rules of Civil Procedure, while simplifying and liberalizing pleading, do not relieve the plaintiff in a tort action of the burden of averring facts sufficient to show the existence of a duty owed by the defendant, a breach of the duty, and damages resulting therefrom. The complaint in this action is replete with conclusions couched in the language of *Medlin, supra,* but does not undertake to describe the substance and severity of the conduct of appellee's employees which allegedly amounted to harassment, nor the substance and severity of the conduct of Pinkerton in its investigations, nor the actions of Western Electric in attempting to discipline appellant. And, as was pointed out in *Medlin,* "it is not enough in an action of this kind to allege a legal conclusion; the actionable conduct should be set out in the [complaint]," *supra* 398 S.W.2d at page 275. This is so because the court has the burden of determining, in the first instance, whether appellees' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether the conduct is such as to be classed as "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities," for which appellees would not be liable. *See* comments to § 46 of the Restatement of Torts, Second.

*Id.* at 583.

■ In addition to the above, there is another ground for our affirming the trial judge on this issue. The summary judgment pleadings of both parties have been supplemented by numerous depositions. Thus, we have presented to us the alleged conduct complained of by plaintiff. In our opinion, the evidence in this record does not establish the requisite abuse of the plaintiff so as to be actionable. Taking the factual allegations to be true, Prudential terminated payments to plaintiff of benefits under an insurance contract. At worst, the allegations of the plaintiff indicate that Prudential might have been negligent in stopping these benefits. A breach of contract, even if clear, is not by itself actionable under the tort of outrageous conduct, nor will a negligent or inadvertent act give rise to such a claim. *See Johnson v. Woman's Hospital, supra.*

■ There is no evidence that Prudential or its agents were abusive, threatening, or that they acted in a harmful or malicious way toward plaintiff. From the time Prudential made its decision to terminate the benefits until the date plaintiff filed suit, Prudential corresponded with her but one time. The letter, after detailing requirements for benefits, stated:

> The medical evidence in our file indicates that you are not totally disabled as defined in the above latter definition. Therefore, we are terminating your Long Term Disability Claim effective April 1, 1980. Accordingly, benefits are being paid to you through March 31, 1980. If you wish to submit additional medical evidence for our review, we will give your claim further consideration. Also, if you have any questions or wish a review of our decision, you may contact the Group Life Claim Division of the Prudential Insurance Company at the above address.

This letter is a routine, form-type letter that contains no threats or inferences of threats. Just as in *Moorhead, supra,* it was established that creditors have certain rights to collect their debts, by the same token, an insurance company has the right to advise its insureds what the criteria are for the receipt of benefits and to advise them of the company's intention to terminate those benefits if the company deems that it is entitled to do so.

## IV. THE CONSUMER PROTECTION ACT.

■ In addition, plaintiff alleged in her complaint that defendant violated one or more of the sections of the Tennessee Consumer Protection Act, asserting as follows:

The aforesaid acts of the defendant constituted unfair and deceptive acts and practices affecting the conduct of the trade of insurance and are, therefore, unlawful as defined in the Tennessee Consumer Protection Act, T.C.A. 47–18–101, et seq., particularly T.C.A. 47–18–104(a) and (b)(21). Plaintiff avers that she is a consumer within the meaning of T.C.A. 47–18–103(a) and that the defendant Prudential Insurance Company is a "trade" or "commerce" as defined in T.C.A. 47–18–103(h). Plaintiff brings her cause of action pursuant to T.C.A. 47–18–109(a) which authorizes a private cause of action for actual damages sustained as a result of the unfair or deceptive acts and practices declared unlawful under this chapter. Plaintiff further avers that the acts of the defendants constituted a willful and knowing violation of this chapter, and asks that the actual damages be trebled in favor of the plaintiff and that the Court award such other relief as may be necessary and proper under these circumstances. Plaintiff further requests reasonable attorney's fees and cost pursuant to T.C.A. 47–18–109(e) for the defendant's violation of this chapter. Wherefore plaintiff sues the defendant, Prudential Insurance Company of America, for actual damages sustained, for treble damages as authorized by T.C.A. 47–18–109(a), reasonable attorney fees and costs to be determined by the Court, and for such other relief as the Court deems necessary and proper.

We have looked to other parts of plaintiff's complaint and her brief to determine what alleged "unfair and deceptive acts and practices" were carried out by Prudential to bring her under the umbrella of this relatively new statute. Examining the factual allegations of her complaint, we perceive that plaintiff alleges that after sustaining what she contends to be an injury that left her permanently disabled, and after receiving long-term disability benefits from Prudential under its policy for several years, in April, 1980, "plaintiff received a letter from the Prudential Insurance Company of America informing her that her long-term disability payments were terminated, as medical evidence in Prudential's file indicated that she was not totally disabled."

Plaintiff contends that the medical evidence does not support the action of Prudential and that she is entitled to long-term disability benefits from the date of termination and continuing on for the rest of her life.

We find no additional facts in plaintiff's brief in this regard, but do find the following contention: "The plaintiff would argue that the defendant's initial termination of benefits in this case of April 1, 1980, and its actions up to the date of reinstatement were without legal justification. The defendant has a continuing duty, even after suit is filed, to act in good faith to its insured and pay him the benefits to which he is entitled.... The insurer did not fulfill its duty to the insured, and the plaintiff would therefore submit that the undisputed facts herein show a *per se* violation of the Tennessee Consumer Protection Act."

On the other hand, Prudential contends that the Consumer Protection Act is not applicable for the reason that the allegations as set forth in plaintiff's complaint bring it within the purview of T.C.A. § 56–8–101, et seq., entitled "Unfair Competition and Unfair or Deceptive Practices," and that Chapter 8 of Title 56, along with the bad-faith penalty statute discussed earlier, provides the sole statutory remedies.

While we are not prepared to go that far, and while Prudential may be correct in its contention that § 56–8–101 provides an exclusive remedy, we are of the opinion that Plaintiff has failed to state a cause of action bringing her within the purview of the Tennessee Consumer Protection Act.

Plaintiff relies strongly upon the cases of *Safeco Insurance Co. of America v. JMG Restaurants Inc.*, 37 Wash.App. 1, 680 P.2d 409 (1984), and *Salois v. Mutual of*

Omaha Ins. Co., 90 Wash.2d 355, 581 P.2d 1349 (1978), in which both cases the Washington Court of Appeals held that an insurer's bad-faith refusal to pay benefits under a policy could constitute a violation of the Washington Consumer Protection Act.

We are constrained not to follow our brothers in the state of Washington for two reasons—first, the state of Washington has a statute that reads as follows:

"The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured and their representatives rest the duty of preserving inviolate the integrity of insurance."

Salois v. Mutual of Omaha, 581 P.2d at 1351 n. 1.

In the two above-cited cases, the court found that the respective defendants breached their duty of good faith and fair dealing, thus violating the above-quoted statute. The courts went a step further and held that the violation of that statute constituted a violation of the Washington Consumer Protection Act.

We have no such statute. Furthermore, the record is silent, and we have no way of knowing whether the state of Washington has a bad-faith penalty statute such as ours, which we have already considered and construed as being the exclusive remedy in cases such as this.

In conclusion, our disposition of these three issues is dispositive of this litigation, making it unnecessary for us to consider the remaining issues presented on appeal by plaintiff and Prudential. For the reasons hereinabove stated, the judgment of the trial court is affirmed. Costs in this cause are taxed to the plaintiff, for which execution may issue, if necessary.

HIGHERS, J., and KIRBY MATHERNE, Special Judge, concur.