**Gloria Jean HIGHFILL and Clyde R. Highfill, Plaintiffs–Appellants,**

**v.**

**BAPTIST HOSPITAL, INC., its Agents and Employees, Defendant,**

**and**

**Ann Fowler, R.N., Defendant–Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 28, 1991.

Application for Permission to Appeal, Denied by Supreme Court Nov. 4, 1991.

Clark L. Shaw, Nashville, for plaintiffs-appellants.

Andree K. Blumstein, Trabue, Sturdivant & DeWitt, Nashville, for defendant-appellee.

## OPINION

TODD, Presiding Judge.

The plaintiffs, Gloria Jean Highfill and Clyde Highfill, have appealed from a summary judgment dismissing their suit against one of the defendants, Ann Fowler, R.N. The other defendant, Baptist Hospital, Inc., was dismissed for failure to state a claim for which relief can be granted; but it does not appear that plaintiffs complain of this action.

■ On July 9, 1990, the Trial Court entered its order sustaining the motion to dismiss filed by Baptist Hospital. On August 17, 1990, the Trial Court entered an order striking Baptist Hospital from the caption of this case; and pleadings and orders thereafter mentioned only Ann Fowler as a defendant in the caption. On December 20, 1990, the Trial Court entered its order sustaining the motion of Ann Fowler for summary judgment. On January 3, 1991, plaintiffs filed their notice of appeal from the judgment entered on December 20, 1990, naming only Ann Fowler as a defendant in the caption and certifying service of notice only upon counsel for Ann Fowler. On the same date, plaintiffs filed their bond for costs on appeal naming only Ann Fowler as an obligee. All subsequent notices in the appeal were directed by appellants only to counsel for Ann Fowler.

Nevertheless, plaintiffs' brief states the issues for review as follows:

1. Whether the Trial Court erred in determining that there was no genuine issue as to any material fact in its granting Defendant's Motion for Summary Judgment, dismissing Appellants' case with prejudice.

2. Whether the Trial Court erred in determining that Appellants failed to state a claim for which relief can be granted.

The brief of plaintiffs does not discuss the second issue, and concludes:

The Appellants believe that they should be allowed to present their case to the trier of fact. The Trial Court's granting of Summary Judgment replaces the trier of fact, i.e. the jury, with itself.

The Appellants respectfully request the Court to allow them to present their case to the trier of fact for determination in this matter and therefore requests (sic) the Court to set aside the Trial Court's Summary Judgment in this matter.

It therefore appears conclusively that Baptist Hospital is not a party to this appeal and, even if it should be such, since the second issue refers to the dismissal of Baptist Hospital, the issue has been waived by lack of a supporting argument.

The incident giving rise to this action is succinctly stated in the complaint as follows:

Plaintiff, Gloria Jean Highfill, was admitted to Baptist Hospital, Inc. on the 24th day of March, 1989 for a hysterectomy. On March 25, 1989 after the surgery and after the Plaintiff, Gloria Jean Highfill, had been returned to her room at approximately 6:00 p.m., Defendant, Ann Fowler, placed her arms around the Plaintiff, Clyde R. Highfill, who is the Plaintiff, Gloria Jean Highfill's husband, and proceeded to commit sexual battery on the Plaintiff, Clyde R. Highfill, in front of Gloria Jean Highfill....

The answer of defendant, Ann Fowler, R.N., denied the quoted allegation.

Defendant Fowler moved for summary judgment upon the basis of the deposition of the plaintiff, Gloria Fowler.

Plaintiffs responded to the motion as follows:

... The deposition taken of Mrs. Highfill presents her view of facts, which are at this point undisputed. They in and of themselves create a genuine issue of material fact therefore making Summary Judgment an inappropriate remedy in this cause of action....

The judgment of the Trial Court contains the following:

... Having considered the defendant's motion and supporting memorandum, the deposition testimony of the plaintiff Gloria Jean Highfill, the plaintiffs' Response to Defendant's Motion for Summary Judgment and Request for Sanctions, the

arguments of counsel, and the entire record in this cause, the Court finds that there are no genuine issues of material fact and that the defendant is entitled to a judgment in her favor as a matter of law in that the plaintiffs' have failed to state claims upon which relief can be granted either for negligence or for outrageous conduct. The Court specifically finds that the type of conduct and injuries alleged by the plaintiffs do not give rise to a cause of action based in negligence. The Court further finds as a matter of law that the defendant's alleged conduct is not outrageous. The Court therefore concludes that the defendant's motion for summary judgment is well-taken and should be granted....

The plaintiff, Gloria Jean Highfill, in her deposition, describes the incident and its effect upon her as follows:

Q. And the nurse gave you a shot. Did she say anything to you at that point that you recall?

A. I don't remember.

Q. Then what do you remember?

A. I opened my eyes just as she walked up behind him.

Q. Behind your husband?

A. Yes. He was facing the wall toward the window.

Q. Looking toward the way you were looking?

A. Yes. He was standing sideways.

Q. To the bed?

A. At the end of my bed.

Q. Looking the same way you're looking?

A. Yes.

Q. Go ahead.

A. She walked up behind him and she put her arms up under his arms and on his chest, and she was standing very, very close. She laid her head on his back, looked down at me, and she was laughing.

Q. Laughing loud?

A. Yes.

. . . .

Q. Do you know what she was laughing at?

A. She was laughing—at the time she was laughing at me.

. . . .

Q. And you say she was laughing at you. Is that what you're assuming?

A. Yes.

. . . .

Q. So you say that she held—that it took her about 10 seconds to put her arms up, put her hands there, rub him and lay her cheek on the back of your husband's shoulder and laugh?

A. And that was it, yes.

. . . .

Q. You keep saying that she laughed in your face. That's just what you assume she was doing?

A. No. It is not what I assume.

Q. What you saw?

A. I saw.

Q. Well, let's go to that. In your answers to interrogatories you said that she laughed in your face and to the extent that said I can take your husband away from you because of the condition you're in.

A. In essence.

Q. Now, that's an assumption, you would agree, would you not?

A. No.

Q. That's how you read it?

A. That's exactly.

Q. Okay. That's what you think she was doing, is that correct?

A. At the time, yes.

Q. Okay. Is that still what you think she was doing?

A. No. Not at all.

Q. What do you think she was doing now?

A. Now I think—I don't—I am still—I still don't understand her motive. It makes no sense to me. No sense whatsoever. But I think she just wanted to make fools of us right now. I've tried to reason this all out in my mind as to why it ever happened in the first place and—

. . .

Appellants argue first that there is an issue as to a material fact because Mrs. Highfill asserts in her deposition that the

incident occurred and Ann Fowler in her response to interrogatories denies that the incident occurred. If the actions of Ann Fowler as stated by Mrs. Highfill were sufficient to support an action for damages, then this argument would support a reversal. However, the facts stated in the above quoted deposition of Mrs. Highfill are not sufficient to support an action for damages. Thus, said facts are not material facts and, even though there is a dispute as to facts, there is no dispute as to material facts.

■ In order to sustain a motion for summary judgment, a defendant must offer evidence which, if not controverted, would entitle that defendant to dismissal. Ann Fowler presented evidence that the incident did not occur. If uncontradicted, this evidence entitled Ms Fowler to dismissal. However, the evidence was contradicted by evidence that Ann Fowler committed certain acts in the presence of Mrs. Highfill. If the acts shown by Mrs. Highfill's evidence were of such nature as to support her suit and entitle her to damages, there would be a dispute of material facts. On the other hand, if the acts shown by Mrs. Highfill's evidence did not demonstrate facts which would entitle her to succeed in this suit, then her evidence of immaterial facts does not create a dispute as to material facts.

Plaintiffs insist however, that the facts recited by Mrs. Highfill do constitute an actionable wrong and do entitle plaintiffs to recover damages.

■ Plaintiffs assert that they have available an expert who would testify to various emotional factors which would subject Mrs. Fowler to liability for her alleged actions.

If this expert testimony was necessary only for the enhancement of damages, it might properly have been withheld until trial. On the other hand, if the evidence offered by Mrs. Highfill was insufficient to show an actionable tort, then such evidence was necessary in order to respond to Mrs. Fowler's motion for summary judgment and supporting sworn testimony.

Plaintiffs concede that, ordinarily, there can be no recovery for emotional distress resulting from an injury to a loved one. *Burroughs v. Jordan*, 224 Tenn. 418, 456 S.W.2d 652 (1970); *Nuckles v. Tenn. Elec. Power Co.*, 155 Tenn. 611, 299 S.W. 775 (1927). However, plaintiffs assert that their rights are based upon the duty of Mrs. Fowler to protect Mrs. Highfill from injury and her violation of that duty by causing emotional distress to Mrs. Highfill.

■ The conduct alleged by Mrs. Highfill, if it occurred, was unseemly, unbecoming and inappropriate. However, not all such conduct is actionable. In order to be actionable, conduct must be such that an ordinary, reasonable, person would realize that it might reasonably be expected to cause injury. The effects upon a beholder of an unseemly display of affection are not so well known as to be a subject of judicial notice; and if such results are within the knowledge of health care professionals, such information was a necessary part of plaintiffs' response to Ms Fowler's motion for summary judgment and supporting evidence. Absent such necessary response, Ms Fowler's motion and evidence must prevail.

■ Plaintiffs assert that the alleged actions of Ms Fowler "could reasonably be regarded under the circumstances to be extreme and outrageous." In *Swallows v. Western Electric Co., Inc.*, Tenn.1976, 543 S.W.2d 581, cited by plaintiffs, the Supreme Court affirmed a summary judgment dismissing an employee's suit against his employer for "outrageous conduct" and "invasion of privacy" by harassing and investigating him for six months. The Court said:

> Liability for the tort of "outrageous conduct" exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury. *Medlin v. Allied Investment Co.*, 217 Tenn. 469, 398 S.W.2d 270 (1966). " 'The liability clearly does not

extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.'" Restatement of Torts (2d), § 46, comment (d), quoted with approval in *Medlin, supra* 398 S.W.2d at page 274.

In *Chandler v. Prudential Ins. Co.,* Tenn.App.1986, 715 S.W.2d 615, cited by plaintiffs, this Court affirmed a partial summary judgment dismissing a count of outrageous conduct by arbitrarily and capriciously terminating contractual benefits and quoted from Restatement of Torts as follows:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

In *Gann v. Key*, Tenn.App.1988, 758 S.W.2d 538, this Court affirmed a summary judgment dismissing a suit against a police chief and captain for outrageous conduct by allegedly issuing a news release suggesting guilt of the deceased son of plaintiffs and said:

Plaintiffs argue that they suffered "grievously, mentally, emotionally, and ultimately physically" because of defendants. There is evidence indicating regrettable effects upon plaintiffs, but said effects as are shown do not constitute such extreme and devastating effects as to create a case of outrageous conduct merely by force of its extreme effect.

In short, the evidence offered by plaintiffs, viewed in the light most favorable to them, does not establish a situation so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community and to cause an average member of the community to exclaim "Outrageous".

In *Weathers v. Pilkinton,* Tenn.App. 1988, 754 S.W.2d 75, cited by plaintiff, this court affirmed a directed verdict dismissing a suit against a physician for outrageous conduct by refusing to involuntarily commit a patient who subsequently took his own life and said:

The facts of this case simply do not warrant a finding that Dr. Pilkinton's conduct was outrageous nor a finding that as a result of his conduct Mrs. Weathers suffered the type of severe emotional distress that is a necessary element of the tort.

Plaintiffs insist that, such conduct in a hospital setting immediately after a very major physical and emotional operation is conduct that would not be tolerated in any civilized society within a hospital environment.

Plaintiffs cite no evidence in the record to inform this Court as to the standards of civilized society within a hospital environment. As previously stated, the standards referred to are not so generally known as to be judicially noticed, hence their existence cannot be assumed or presumed for the purpose of showing that actionable conduct (which was denied) did in fact and in law, occur.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the plaintiffs. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

CANTRELL, J., and LLOYD TATUM, Special Judge, concur.